## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:15-CV-61598

YEHONATAN WEINBERG, individually and
on behalf of all others similarly situated,

     *Plaintiff,*

*v.*

ADVANCED DATA PROCESSING, INC.,
a Delaware corporation, and INTERMEDIX
CORP., a Delaware corporation,

     *Defendants*.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Yehonatan Weinberg brings this Class Action Complaint and Demand for Jury

Trial against Defendants Advanced Data Processing, Inc. (d/b/a Intermedix) and Intermedix

Corp. (collectively referred to in the singular as "Intermedix") and alleges as follows upon

personal knowledge as to himself and his own acts and experiences, and, as to all other matters,

upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.     Plaintiff brings this class action lawsuit against Intermedix because of its failure

to safeguard the sensitive personal information of potentially millions of emergency medical

service patients, including their names, dates of birth, Social Security numbers, dates of medical

services, health insurance information, and other protected health information as defined by the

Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (collectively, "Sensitive

Information").

2.     Intermedix is one of the largest healthcare payment and billing processers in the United States, processing more than 15 million patient encounters per year.

3.     As a healthcare service provider, Intermedix is required to protect patients' Sensitive Information by adopting and implementing specific data security regulations and standards set forth under HIPAA and also as mandated by industry standard data protection protocols.

4.     Unfortunately, nearly *three years ago* an Intermedix employee systematically accessed and viewed the Sensitive Information of hundreds (if not thousands) of emergency medical service patients who used ambulances (which Intermedix provided, among other things, billing and payment processing for). This Sensitive Information was then provided to third parties who used it to file fraudulent tax returns with the Internal Revenue Service.

5.     While some security threats are unavoidable in a rapidly developing technological environment (and, indeed, underscore the need for modern and robust information security protections), Intermedix's failure to, among other things, segment and control its databases in accordance with long standing HIPAA security regulations and industry standard data protection protocols jeopardized potentially millions of emergency medical service patients' Sensitive Information.

6.     As a result, Plaintiff's and a proposed Class of consumers' (defined below) identities were stolen and used to, among other things, file fraudulent tax returns.

**PARTIES**

7.     Plaintiff Yehonatan Weinberg is a natural person and resident of the State of California.

8.     Defendant Advanced Data Processing, Inc., d/b/a Intermedix, is a corporation

2

existing under the laws of the State of Delaware with its headquarters and principal place of

business located at 6451 North Federal Highway, Suite 1000, Fort Lauderdale, Florida 33308.

Defendant Advanced Data Processing, Inc. conducts business throughout this District, the State

of Florida, and the United States.

9.      Defendant Intermedix Corp. is a corporation existing under the laws of the State

of Delaware with its headquarters and principal place of business at 6451 North Federal

Highway, Suite 1000, Fort Lauderdale, Florida 33308. Defendant Intermedix Corp. conducts

business throughout this District, the State of Florida, and the United States.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(d)(2) because (a) at least one member of the putative Class is a citizen of a state different

from Intermedix, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and

costs, and (c) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over Intermedix because it conducts business

in this District, its headquarters and principal place of business is located in this District, and the

unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated, in part,

from this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Intermedix resides in

this District, and because the unlawful conduct alleged in the Complaint occurred in, was

directed to, and/or emanated, in part, from this District. Venue is additionally proper because

Intermedix maintains its headquarters and principal place of business in this District.

3

## FACTUAL BACKGROUND

***It is Well Established That Security Breaches Lead to Instances of Identity Theft, Like Those Experienced in This Case.***

13.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use identifying data such as SSNs to open financial accounts, receive government benefits and incur charges and credit in a person's name.[1] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.

14.     In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[2]

15.     According to the Federal Trade Commission ("FTC"), identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[3] Identity thieves use stolen personal information such as SSNs for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[4]

---

[1]     *See* United States Government Accountability Office, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf.

[2]     *Id.*

[3]     *See* Federal Trade Commission, *Identity Theft*, http://www.consumer.ftc.gov/features/feature-0014-identity-theft (last visited August 4, 2015).

[4]     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number,

4

16.     With access to an individual's Sensitive Information, criminals can do more than just empty a victim's bank account—they can also commit various types of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information (like Plaintiff Weinberg experienced in this case). In addition, identity thieves may obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.[5] Further, loss of private and personal health information can expose the victim to loss of reputation, loss of job employment, blackmail and other negative effects.

17.     Sensitive Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, SSNs, and other Sensitive Information directly on various Internet websites making the information publicly available. In one study, researchers found hundreds of websites displaying stolen Sensitive Information. The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[6]

employer or taxpayer identification number." *Id.*

[5]     *See* Federal Trade Commission, *Identity Theft*, http://www.consumer.ftc.gov/features/feature-0014-identity-theft (last visited August 4, 2015).

[6]     *See The Underground Credit Card Blackmarket*, StopTheHacker, http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/ (last

18.     A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[7] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[8] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

19.     Further, medical databases are particularly high value targets for identity thieves. According to a 2012 National Insurance report, "[a] stolen medical identity has a $50 street value – whereas a stolen social security number, on the other hand, only sells for $1."[9] In fact, the medical industry has experienced disproportionally higher instances of computer theft than any other industry.

20.     Indeed, Intermedix's Notice of Data Breach letter even recognizes the long-lasting harmful effects of its misconduct and recommends that Plaintiff and the Class remain vigilant and continue to monitor their credit indefinitely.

**The Data Breach.**

21.     Between June 1, 2012 and October 2, 2012, an employee of Intermedix was able to access records containing the Sensitive Information of potentially millions of emergency

---

visited August 4, 2015).

[7]      *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), http://news.cnet.com/8301-27080_3-10460902-245.html (last visited August 4, 2015).

[8]      *Id.*

[9]      *See Study: Few Aware of Medical Identity Theft Risk*, Claims Journal, http://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited August 4,

medical service patients.

22.    The employee sought out these patients' Sensitive Information so that he or she could disclose or sell that information to third parties who, in turn, used the information to file fraudulent tax returns with the Internal Revenue Service (so that they could recover those individuals' tax refunds).

23.    Intermedix designed and implemented its policies and procedures regarding the security of protected health information and Sensitive Information. These policies and procedures failed to adhere to reasonable and best industry practices in safeguarding protected health information and other Sensitive Information. For instance, Intermedix failed to supervise employees with access to patients' Sensitive Information, provide adequate protections and safeguards limiting access to this information, or otherwise safeguard Plaintiff's and the Class members' Sensitive Information.

24.    Further, Intermedix did not timely investigate or notify Plaintiff or the Class members by written, telephone, electronic or authorized substitute notice until Intermedix posted a Notice of Data Breach on its website in late 2014. The "notice" itself was problematic inasmuch as Plaintiff and the Class did not have a direct relationship (business or otherwise) with Intermedix and had no reason to visit Intermedix's website (where they would still have to search for the Notice of Data Breach). That's because Intermedix was merely the payment and billing processor used by Plaintiff's and the Class's medical service providers and thus, were "behind the scenes."

25.    Unfortunately, Intermedix (and/or its agents) didn't start notifying affected individuals until several years after the breach occurred. In fact, Plaintiff was not even notified

2015).

about the breach until early April 2015 (nearly *three years* after the breach).

26.     Incredibly, and thanks to Intermedix's wholly inadequate policies concerning the handling and security of Plaintiff's and the Class's Sensitive Information (including the oversight of those employees with access to such information), an employee—without authorization—was able to systematically access potentially millions of patient records and put that data directly into the hands of thieves.

27.     The risk and other consequences associated with this outcome are clear. Even Defendants—through their Notice of Data Breach regarding the data breach—advised those affected to "remain vigilant and monitor your credit reports periodically," and further advised that those affected consider "enroll[ing] in a free credit monitoring service" or "placing a fraud alert or security freeze on your credit report."

***Intermedix Violated HIPAA and Industry Standard Data Protection Protocols.***

28.     HIPAA was enacted and became effective in 1996.

29.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Sensitive Information, like the data unsecured by Intermedix. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

30.     Intermedix's data breach resulted from a combination of insufficiencies that demonstrates Intermedix did not comply with the safeguards mandated by HIPAA regulations or even industry standards. That is, Intermedix failed to implement adequate information security policies and procedures to restrict access to (*i.e.*, segment) its electronic databases (*e.g.*, to limit

employees and personnel from accessing Sensitive Information who don't need access to such information), supervise employees and personnel with access to Sensitive Information, and enforce their data protection and confidentiality policies.

    31.    Intermedix's security failures also include, but are not limited to, the following:

    a.    Failing to maintain an adequate data security system to prevent unauthorized access to Sensitive Information;

    b.    Failing to mitigate the risks of a data breach and unauthorized access to Sensitive Information;

    c.    Failing to ensure the confidentiality and integrity of electronic protected health information created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1);

    d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

    f.    Failing to identify and respond to suspected or known security incidents, and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

    g.    Failing to protect against any reasonably anticipated threats or hazards to

9

the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h.      Failing to protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i.      Failing to ensure compliance with the HIPAA security standard rules by their workforce in violation of 45 C.F.R. § 164.306(a)(4);

j.      Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §§ 164.502, *et seq.*; and

k.      Failing to effectively train all members of their workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. 164.308(a)(5).

32.     Intermedix also failed to comply with industry standards relating to data security. For example, the National Institute of Standards and Technology ("NIST") published a report detailing standards for healthcare-related service providers to come into compliance with HIPAA's Security Rule. In the Report, NIST recommends specific techniques to safeguard electronically stored Sensitive Information. In one example, NIST specifically recommends "implement[ing] policies and procedures that . . . document, review, and modify a user's right of

access to a workstation, transaction, program, or process."[10]

33.     In another example, NIST also discussed means for establishing "Workstation Security" which included documenting "the different ways workstations are accessed by employees and nonemployees," as well as how to maintain proper "Access Control" by determining, among other things, how users access and use information and how much information they should be permitted to access at any given time.[11]

34.     These examples illustrate Intermedix's failure to comply with even basic industry standards. Even more striking is that one of the exact examples recommended by NIST (*i.e.*, monitoring and limiting access to Sensitive Information, a free and commonly used technique), would have prevented the unauthorized access of Sensitive Information at issue here.

35.     Unfortunately, the above-described security measures were not implemented, which resulted in the unauthorized access to and use of Plaintiff's and the Class's Sensitive Information.

***Plaintiff Yehonatan Weinberg's Experience.***

36.     In 2012, Plaintiff Weinberg sought emergency medical treatment and was taken to a hospital in an ambulance.

37.     In order to use the ambulance, Plaintiff Weinberg was required to provide the ambulance service with his Sensitive Information.

38.     Unbeknownst to Plaintiff Weinberg, the ambulance service he used (Philadelphia Fire Department Emergency Medical Services) engaged Intermedix to handle its billing and

---

[10]     Matthew Scholl, et al., National Institute of Standards and Technology, U.S. Dep't of Commerce. NIST Special Publication 800-66 Revision 1, *An Introductory Resource Guide for Implementing the Health Insurance Portability and Accountability Act Security Rule*, at 23 (2008), http://csrc.nist.gov/publications/nistpubs/800-66-Rev1/SP-800-66-Revision1.pdf.

11

payment-related processing services. As a result, Intermedix received Plaintiff Weinberg's Sensitive Information (and also a portion of the money he paid for the ambulance, in the form of service or processing fees charged by Intermedix for its billing and payment processing services).

39.     The records accessed and viewed by the Intermedix employee discussed above included Plaintiff's Sensitive Information.

40.     Plaintiff Weinberg's Sensitive Information was thereafter disclosed to or sold to a group of individuals who subsequently used that information to steal his identity and file a fraudulent tax return using his name and Social Security number.

41.     After learning that his identity was stolen, Plaintiff Weinberg spent (and continues to spend) a substantial amount of time and resources fixing the identity theft that he experienced.

42.     Prior to the Intermedix data breach, Plaintiff Weinberg's identity had never been stolen.

43.     Indeed, prior to learning about the Intermedix data breach, Plaintiff Weinberg took (and continues to take) considerable precautions to protect his Sensitive Information. Weinberg avoids transmitting his Sensitive Information over insecure sources. He stores documents containing Sensitive Information in a safe and secure location and destroys any documents that he receives in the mail that contain any of his Sensitive Information, or that contain any information that could otherwise be used to steal his identity, such as credit card offers.

44.     However, as explained above, Plaintiff Weinberg has experienced—for the first time in his life—instances of identity theft, which were caused directly by Intermedix's failure to

---

[11]     *Id.* at 38, 40.

protect his Sensitive Information.

45.    Thus, given that before the data breach Plaintiff Weinberg had never previously

suffered from identity theft and undertook considerable efforts to protect his Sensitive

Information, Weinberg has sufficiently shown that the data breach caused identity theft here.

46.    In short, but for Intermedix's data breach, Weinberg's identity would not have

been stolen—and, in turn, his Sensitive Information would not have been used to file a

fraudulent tax return purportedly on his behalf.

**CLASS ALLEGATIONS**

47.    **Class Definitions**: Plaintiff Weinberg brings this action pursuant to Fed. R. Civ.

P. 23 on behalf of himself and a class and subclass of similarly situated individuals, defined as

follows:

> **Class**: All persons in the United States and its territories whose Sensitive
> Information was accessed without authorization by an Intermedix employee in
> 2012.

> **Identity Theft Subclass**: All Class members who experienced identity theft as a
> result of Intermedix's data breach.

The following people are excluded from the Class and Identity Theft Subclass (collectively

referred to as the "Class", unless otherwise indicated): (1) any Judge or Magistrate presiding

over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents,

successors, predecessors, and any entity in which the Defendants or their parents have a

controlling interest and their current or former employees, officers and directors;

(3) persons who properly execute and file a timely request for exclusion from the Class;

(4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise

released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives,

13

successors, and assigns of any such excluded persons.

48.     **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time, but on information and belief, there are thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the members of the Class will be easily identified through Defendants' records.

49.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members, and include, but are not limited to:

       a.     Whether Defendants adequately safeguarded Plaintiff's and the Class members' Sensitive Information;

       b.     Whether Defendants' storage, maintenance, and protection of Plaintiff's and the Class members' Sensitive Information violated HIPAA's security protocols or those mandated by industry standards;

       c.     Whether Defendants breached their duties to protect Plaintiff's and the Class members' Sensitive Information;

       d.     Whether Defendants were negligent in storing and protecting Plaintiff's and the Class members' Sensitive Information;

       e.     Whether Defendants should be liable for damages incurred by Plaintiff and the Class as a result of the data breach; and

       f.     Whether Defendants should retain the entirety of the money paid by Plaintiff and the Class members for medical services (which Defendants received a portion of in the form of service or processing fees charged to the medical service providers for Defendants' billing and payment processing).

50.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct with Plaintiff and the Class.

51.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

52.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff or any other Class member.

53.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase

15

the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

54.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

55.     Intermedix requested and came into possession of the Plaintiff's and the Class's Sensitive Information, and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed. Intermedix's duty arose from the legal and industry standards discussed above.

56.     Intermedix had a duty to employ procedures to detect and prevent the improper access and misuse of the Plaintiff's and the Class's Sensitive Information. The breach of security, unauthorized access, and resulting injury to Plaintiff and the Class were reasonably foreseeable, particularly in light of Intermedix's inadequate data security protocols and the other major data breaches impacting companies in the United States that fail to implement proper data security measures.

57.     Intermedix, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to implement industry-standard protocols and exercising reasonable care in protecting and safeguarding Plaintiff's and the Class members' Sensitive Information within Intermedix's control.

58.     Intermedix, through its actions and/or omissions, breached its duty to Plaintiff and

16

the Class by failing to have procedures in place to detect and prevent access to Plaintiff's and the Class's Sensitive Information by unauthorized persons.

59.     But for Intermedix's breach of its duties, Plaintiff's and the Class's Sensitive Information would not have been compromised. Plaintiff's and the Class's Sensitive Information was stolen and accessed as the proximate result of Intermedix failing to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate security measures.

60.     As a result of Intermedix's conduct, Plaintiff and the Class suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; and increased risk of future harm (such as fraudulent charges, fraudulently filed tax returns, and greater susceptibility to identity theft—along with all of the time and expenses associated with dealing with that). Further, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

61.     Additionally, Plaintiff and the Identity Theft Subclass have suffered actual damages including suffering from identity theft.

**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     As guardians of Plaintiff's and the Class's Sensitive Information, Intermedix owed a fiduciary duty to Plaintiff and the Class to: (1) protect their Sensitive Information; (2)

17

timely notify them of a data breach; and (3) maintain complete and accurate records of what and where their Sensitive Information was stored and who had access to that information.

64.     Intermedix breached its fiduciary duty to Plaintiff and the Class by, among other things:

a.     Failing to diligently investigate the data breach to determine the number of individuals affected;

b.     Failing to timely notify and/or warn Plaintiff and the Class of the data breach;

c.     Failing to ensure the confidentiality and integrity of electronic protected health information created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1);

d.     Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

e.     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

f.     Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

18

g.     Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h.     Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i.     Failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(4);

j.     Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502;

k.     Failing to effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.308(a)(5); and

l.     Otherwise failing to safeguard Plaintiff's and the Class's Sensitive Information.

65.     As a result of Intermedix's conduct, Plaintiff and the Class suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased

19

credit scores and ratings; and increased risk of future harm (such as fraudulent charges, fraudulently filed tax returns, and greater susceptibility to identity theft—along with all of the time and expenses associated with dealing with that). Further, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

66.     Additionally, Plaintiff and the Identity Theft Subclass have suffered actual damages including suffering from instances of identity theft.

### THIRD CAUSE OF ACTION
### Restitution/Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 54–66.

68.     Plaintiff and members of the Class conferred a monetary benefit on Intermedix. Intermedix received and retained money belonging to Plaintiff and the Class in the form of service or processing fees charged to their medical service providers for Intermedix's billing and payment processing services.

69.     Intermedix appreciates or has knowledge of such benefit.

70.     The service or processing fees that Plaintiff and the Class (directly or indirectly) paid to Intermedix are used by Intermedix, in part, to pay for the administrative costs of data management and security. Intermedix even claims to have invested millions of dollars in its information security safeguards to protect patient related data.

71.     Under principles of equity and good conscience, Intermedix should not be permitted to retain the money belonging to Plaintiff and the Class, because Intermedix failed to implement data management and security measures that are mandated by HIPAA and industry

standards.

72.     Accordingly, Intermedix has received money from Plaintiff and the Class through the unlawful practices alleged herein, which in equity and good conscience should be returned.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Yehonatan Weinberg, individually and on behalf of the Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, and appointing Plaintiff Weinberg as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendants' actions, as described above, constitute (i) Negligence and (ii) Breach of Fiduciary Duty, and that Defendants, through their actions, were unjustly enriched;

C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Defendants to protect all data collected through the course of their business in accordance with HIPAA and industry standards;

D.     Awarding restitution to Plaintiff and the Class in an amount to be determined at trial;

E.     Awarding damages to Plaintiff and the Class in an amount to be determined at trial;

F.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiff and the Class pre and post-judgment interest to the maximum

extent allowable by law; and

   H.  Awarding such other and further legal or equitable relief as equity and justice may require.

**JURY DEMAND**

   Plaintiff requests trial by jury of all claims that can be so tried.

            Respectfully submitted,

            **YEHONATAN WEINBERG**, individually and on
            behalf of all others similarly situated,

Dated: August 4, 2015      By: /s/ Edmund A. Normand
              One of Plaintiff's Attorneys

            Edmund A. Normand (Florida Bar No. 865590)
            ed@ednormand.com
            EDMUND A. NORMAND PLLC
            4381 New Broad Street
            Orlando, Florida 32814
            Tel: 407.625.9043

            Ari J. Scharg
            ascharg@edelson.com
            Benjamin S. Thomassen
            bthomassen@edelson.com
            EDELSON PC
            350 North LaSalle Street, Suite 1300
            Chicago, Illinois 60654
            Tel: 312.589.6370
            Fax: 312.589.6378

22
